UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
_____x

RACHEL ANDERSEN,                                             No. 8:21-cv-2646

                                    Plaintiff,              **COMPLAINT**

            -against-                                       ***Demand for Jury Trial***

CASTLEROCK ASSET MANAGEMENT, LLC,                          ***Declaratory Relief Requested***
                                                           ***Injunctive Relief Requested***
                                    Defendant.
_____x

PLAINTIFF RACHEL ANDERSEN, by her attorneys Eisner Dictor & Lamadrid, P.C., whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, and Goddard Law PLLC *(pro hoc vice pending)*, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, , alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought on behalf of Plaintiff Rachel Andersen, against Defendant Castlerock Asset Management, LLC, for gender and pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act; for gender and pregnancy discrimination and retaliation in violation of the Florida Civil Rights Act of 1992; and for retaliation and interference with Plaintiff's rights under the Family and Medical Leave Act, together with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

-1-

## **PRELIMINARY STATEMENT**

2.      Plaintiff brings this action to remedy discrimination against her in the terms and conditions of her employment on account of her gender and pregnancy and retaliation for her engagement in protected activity in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* as amended by the Civil Rights Act of 1991 ("Title VII")[1] and the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, *et seq.* ("FCRA").

3.      After learning that Plaintiff was pregnant, Defendant failed to provide Plaintiff with leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and suggested that they did not think she would be able to do the job with a young child. When Plaintiff remained committed to her work and did not leave of her own volition, Defendant retaliated against her by placing her on furlough and ultimately terminating her employment. She was the only person at the management level terminated at that time.

4.      Plaintiff demands a jury trial.

## **JURISDICTION AND VENUE**

5.      This Court has jurisdiction over Plaintiff's claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C § 2000, *et seq.* as amended by the Civil Rights Act of 1991 and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

---

[1] While Title VII does not list "caregiver" as a protected category, Title VII does recognize sex-stereotyping regarding the roles of woman in relation to their caregiver responsibilities as gender/sex discrimination. See *Back v. Hastings on Hudson Union Frees School District*, 365 F.3d 107 (2nd Circuit 2004) (Stereotyping of women as caregivers can, by itself and without more, be evidence of an impermissible, sex-based motive for adverse employment decision in violation of equal protection principles).

6.     The Court has supplemental jurisdiction over Plaintiff's state claims, specifically the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in Tampa, Florida.

## PROCEDURAL REQUIREMENTS

8.     Plaintiff filed a charge of unlawful discriminatory practice relating to employment because of gender, pregnancy, and retaliation with the Equal Employment Opportunity Commission ("EEOC") on May 7, 2021. Plaintiff received a Dismissal and Notice of Rights dated September 7, 2021, attached to this Complaint as Exhibit A.

9.     Plaintiff has exhausted all administrative prerequisites and has filed this action within the applicable period of time pursuant to Title VII and the FCRA.

## PARTIES

10.     Plaintiff Rachel Andersen ("Plaintiff") is an individual who lives in Dunedin, Florida. At all relevant times, Plaintiff was Defendant's employee within the meaning of Title VII, the FMLA, and other state and local anti-discrimination laws.

11.     Castlerock Asset Management LLC ("Defendant Castlerock" or the "Company") is a limited liability company organized and existing under the laws of Tennessee since 2013. Castlerock Asset Management LLC is in the hospitality industry with one hotel in Tampa, Florida and two hotels and a restaurant in Nashville, Tennessee. It was founded in 2013 by Kevin Fee and Seamus Ross. Defendant Castlerock acquired

The Westin Tampa Bay and became a successor-in-interest to The Westin Tampa Bay and its employees. The Westin Tampa Bay is Defendant Castlerock's first Florida location.

12.     At all times relevant, Defendant Castlerock had over 100 employees.

13.     At all times relevant, Defendant Castlerock was Plaintiff's employer within the meaning of Title VII, the FMLA, and other state and local anti-discrimination laws.

## FACTUAL BACKGROUND

### Plaintiff Begins Work at Westin Tampa Bay

14.     In or about June 2009, Plaintiff began working at The Westin Tampa Bay Hotel ("the Property" or "the Hotel"), which was owned by Impact Properties, and enjoyed a decade of success. She was hired as the Director of Sales and Marketing and excelled for 10 years.

15.     On or about July 1, 2019, Defendant Castlerock, from Nashville Tennessee, purchased the Property from Impact Properties. The name of the Hotel did not change as it was a franchise company. Defendant Castlerock did not make significant staffing changes at this time. Defendant Castlerock did not fire any of the employees who were employed under the previous management. Furthermore, they kept the employees' tenure for employment for Paid Time Off ("PTO") which was earned with time dedicated to the company. As a result, Plaintiff had PTO that she had accrued over the 10 years she worked at the Hotel.

16.     When Defendant Castlerock acquired the Property, David Sheets ("GM Sheets") became the General Manager of the Hotel.

### Defendant Immediately Demotes Plaintiff When It Learn She is Pregnant

17.     At the end of August 2019, Plaintiff informed her team, including new General Manager, GM Sheets, that she was pregnant.

18.     No one from Defendant informed Plaintiff of any rights under the FMLA or any other leave entitlement at this time, though it was apparent leave would be needed.

19.     Shortly after Plaintiff announced her pregnancy, Defendant told her that a new Director of Sales was being hired and taking over her position. Defendant then demoted Plaintiff to the Assistant Director of Sales and Marketing.

20.     Defendant's demotion of Plaintiff also decreased her salary from $95,000 to $80,000, a significant decrease immediately before she was going to have a new baby. The new Director of Sales and Marketing, Colleen Beck ("Director Beck"), made well over $120,000.

21.     When Defendant Castlerock took over the Hotel, some new positions were created and roles were filled because other employees voluntarily left, however, Plaintiff was the only individual to receive a demotion.

22.     Upon information and belief, Plaintiff was the first employee to announce a pregnancy after Defendant Castlerock acquired the Hotel.

### **Defendant Lies to Plaintiff About Her Leave Entitlement**

23.     In or about November 2019, Plaintiff inquired about benefits and maternity leave, as no one had mentioned it to her.

24.     Plaintiff was directed to speak with Greg Merrick ("HR Merrick"), the Human Resources Vice President for Defendant Castlerock who was primarily located at

the corporate office. HR Merrick was not usually at the Hotel, so when he came to the property, Plaintiff approached him about benefits and her necessary leave.

25.     HR Merrick told Plaintiff that she did not qualify for FMLA because she had not been an employee of the company for one year. Plaintiff asked if HR Merrick was including her time before Defendant acquired the property and her original hire date in 2009. Without hesitation, Director HR Merrick said "No, it doesn't work that way."

26.     HR Merrick's statement was untrue as FMLA leave carries through successors-in-interest companies, which Defendant Castlerock was to The Westin Tampa Bay where Plaintiff worked since 2009.

27.     On information and belief, Defendant did not lie about FMLA rights to non-pregnant employees.

28.     Plaintiff did not know that a successor company must include the employee's time at the company prior to the acquisition when calculating the necessary 12 months of employment to qualify for leave under the FMLA, so she did not press further.

29.     Defendant failed to notify Charing Party of her rights under the FMLA, interfered with her rights under the FMLA, and failed to notify her of the leave to which she was entitled.

30.     HR Merrick told Plaintiff that she could use her accumulated PTO, which was approximately 17 days at the time. Additionally, HR Merrick told her she could take two months of unpaid leave (running concurrently with any PTO days) but did not state that it was FMLA leave or that she had a right to return to her position at the conclusion of her leave.

31.      Plaintiff decided to save her PTO time and use it while she was on her unpaid leave, so she would not be completely without income. She went to the doctor on her lunch break and made adjustments to ensure she did not use PTO before her leave.

32.      On or about March 11, 2020, Plaintiff filed paperwork for personal leave and submitted it to Human Resources. She presented the paperwork to Director of Human Resources Karen Ratz ("HR Ratz") at the Tampa location. HR Ratz reported to HR Merrick at the corporate office. Defendant approved Plaintiff's leave to start on March 24, 2020, with a return date of June 1, 2020.

## Defendant Forces Plaintiff To Begin Her Leave Early

33.      On or about March 18, 2020, GM Sheets informed all managers that the company was cutting back managers' schedules to three days a week from five, in response to the COVID-19 pandemic. GM Sheets met with the managers and the sales team and restricted their time and salaries accordingly.

34.      Defendant instructed Plaintiff to begin her leave on March 19 instead of March 24, 2020.

35.      Plaintiff emailed GM Sheets, Director Beck and HR Ratz confirming her leave and specifying how she intended to use her PTO. Initially, Plaintiff wanted to take her PTO days consecutively, in order to be paid in lump sum. GM Sheets and Director Beck told Plaintiff to split her PTO days over the 2 months she would be on maternity leave. To comply with their wishes, Plaintiff outlined in her email how she intended to split up her PTO over the two months.

## Defendant Cuts Paid Time Off After Plaintiff Gives Birth

36.     On March 29, 2020, Plaintiff gave birth. Two days after giving birth, on March 31, Plaintiff attempted to update the hours she was going to take PTO with Human Resources. She logged on to the payroll website to verify the hours were in the system and confirm that there were no problems. However, she was unable to log in to the vacation portion of the application, which was where she recorded her PTO days. Plaintiff contacted Director Beck about the technical difficulties she was experiencing but did not hear back from her.

37.     Thereafter, GM Sheets contacted Plaintiff to say the company had suspended all PTO. He told her that she would still "have" her PTO hours, but that she could not currently use them. Plaintiff was upset because she was already on leave and her pregnancy related PTO had already been approved.

38.     On information and belief, Defendant intentionally told Plaintiff to spread her PTO hours out over her two month leave because they knew that they would be suspending PTO and did not want to pay Plaintiff her full PTO hours.

39.     Plaintiff was now left with no income during her leave, which was a significant stress to her and her family.

40.     GM Sheets and Director Beck requested to have a call with Plaintiff on May 8, 2020. They informed her that business had not picked up and everyone was still working 3 days a week.

41.     GM Sheets then stated, "Childcare is difficult to arrange" and noted that "childcare is a full-time job." Director Beck told Plaintiff "to think through what she wanted to do" since she would be working three days a week if she returned.

42.     On information and belief, Defendant was trying to force Plaintiff to resign her position in retaliation for and to stop her from taking leave.

43.     On information and belief, GM Sheets and Director Beck also wanted Plaintiff to resign because they held outdated, negative, gender stereotypes about working mothers and did not want to employ a new mother. Upon information and belief, Defendant did not discriminate against men who had babies.

44.     Despite the clear message that Defendant did not want to employ a new mother, Plaintiff told them that she intended to return to work on June 1, 2020, after her ten and a half week maternity leave ended, as she had previously decided with Defendant.

45.     On or about May 21, 2020, because of COVID-19-related childcare issues, Plaintiff asked to push her return date to June 15, 2020.

46.     Plaintiff still fully intended to return to her position.

**Defendant Discriminates and Retaliates Against Plaintiff by Furloughing Her**

47.     On or about May 21, 2020, Director Beck texted Plaintiff to set up a time to call the next day.

48.     On the call the next day, May 22, 2020, Director Beck informed Plaintiff that she was being furloughed for up to six months.

49.     Director Beck continued her previous attempt to force Plaintiff to resign by stating such things as, "working is not ideal for your situation," and that "childcare is five days a week."

50.     Plaintiff was surprised because two weeks prior, she had been confirmed to come back in to work on June 1, 2020, and there had been no mention of any furlough.

51.    Director Beck also informed Plaintiff that her insurance would stop at the end of May 2020. Plaintiff and her newborn baby were both covered under this insurance plan.

52.    Plaintiff told Director Beck how much she needed her job, but Director Beck acted like furloughing her was a favor and stated that "returning to work would not be convenient because of the new baby."

53.    Upon information and belief, Plaintiff was the only person furloughed by Defendant in May.

54.    Furthermore, Defendant did not furlough anyone else in the sales and catering departments or anyone else not on maternity leave at any time. As an employee with a higher rank and seniority, Defendant Castlerock should have furloughed others in the sales and catering department before Plaintiff.

55.    On information and belief, Defendant furloughed Plaintiff, and only Plaintiff, because they wanted her to resign because they did not want a new mother as an employee.

### Defendant Discriminates and Retaliates Against Plaintiff by Terminating her Employment

56.    On or about May 27, 2020, Plaintiff received a call from her daughter's Pediatrician's office. The office had a problem verifying Plaintiff's insurance. Plaintiff discovered Defendant had cut off her insurance at the end of April even though Director Beck had told her that she would have insurance through the end of May.

57.     Plaintiff's suspicions that she was being terminated because she refused to quit were confirmed when, on June 24, 2020, a coworker told Plaintiff that the company was bringing back all managers to work five days with a 25% pay cut.

58.     No one from Defendant Castlerock reached out to Plaintiff regarding returning to work despite her being a manager.

59.     Instead of being called back to work, on or about August 12, 2020, Plaintiff received a termination letter from Defendant dated August 4, 2020.

60.     Upon information and belief, no other employees were terminated at this time.

61.     Plaintiff was shocked to have her employment terminated without any of her managers reaching out to her or doing it over the phone.

62.     On information and belief, when Defendant realized that Plaintiff was not going to resign, Defendant both discriminated and retaliated against Plaintiff for taking leave and because they did not want a new mother as an employee.

## AS AND FOR A FIRST CAUSE OF ACTION
*Gender and Pregnancy Discrimination under Title VII*

63.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

64.     Defendant Castlerock has discriminated against Plaintiff on the basis of her gender and pregnancy in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* as amended by the Civil Rights Act of 1991. Plaintiff has suffered disparate treatment as a result of Defendant Castlerock's wrongful conduct.

-11-

65.     Defendant Castlerock has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated men and non-pregnant employees and by subjecting her to severe and pervasive harassment, a hostile work environment, discriminatory demotions, discriminatory termination, and disparate terms and conditions of employment on the basis of her gender and pregnancy.

66.     Defendant Castlerock's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

67.     By reason of Defendant Castlerock's discrimination, Plaintiff is entitled to all remedies available for violations of Title VII.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendant Castlerock, for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other relief to which the Plaintiff is entitled. It is specifically requested that this Court grant judgment in favor of Plaintiff as follows:

a) Declaring that by the acts and practices complained of herein, Defendant Castlerock has violated Title VII;

b) Directing Defendant Castlerock to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

c) Directing Defendant Castlerock to make Plaintiff whole for all earnings she would have received but for Defendant Castlerock's discriminatory and retaliatory treatment, including but not limited to, lost wages, pension, and other benefits;

d)  Directing Defendant Castlerock to pay Plaintiff compensatory damages for her mental anguish, emotional distress, and humiliation;

e)  Awarding Plaintiff punitive damages as relates to the malicious and willful conduct of Defendant Castlerock;

f)  Awarding Plaintiff pre- and post-judgment interest;

g)  Awarding Plaintiff costs and reasonable attorneys' fees; and

h)  Other such relief as may be appropriate to effectuate the purposes of Title VII.

## AS AND FOR A SECOND CAUSE OF ACTION
### *Retaliation in violation of Title VII*

68.      Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

69.      Plaintiff repeatedly objected to and reported to Defendant Castlerock about Defendant's discriminatory treatment of her.

70.      In retaliation, Defendant Castlerock subjected Plaintiff to a series of adverse employment actions including, but not limited to, demoting Plaintiff, furloughing Plaintiff and terminating Plaintiff's employment in violation of the Title VII.

71.      Defendant Castlerock's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff.

72.      As a result of Defendant Castlerock's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

73.      By reason of Defendant Castlerock's retaliation, Plaintiff is entitled to all

remedies available for violations of Title VII.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendant Castlerock, for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other relief to which the Plaintiff is entitled. It is specifically requested that this Court grant judgment in favor of Plaintiff as follows:

i)   Declaring that by the acts and practices complained of herein, Defendant Castlerock has violated Title VII;

j)   Directing Defendant Castlerock to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

k)   Directing Defendant Castlerock to make Plaintiff whole for all earnings she would have received but for Defendant Castlerock's discriminatory and retaliatory treatment, including but not limited to, lost wages, pension, and other benefits;

l)   Directing Defendant Castlerock to pay Plaintiff compensatory damages for her mental anguish, emotional distress, and humiliation;

m)  Awarding Plaintiff punitive damages as relates to the malicious and willful conduct of Defendant Castlerock;

n)   Awarding Plaintiff pre- and post-judgment interest;

o)   Awarding Plaintiff costs and reasonable attorneys' fees; and

p)   Other such relief as may be appropriate to effectuate the purposes of Title VII.

**AS AND FOR A THIRD CAUSE OF ACTION**

-14-

*Gender and Pregnancy Discrimination under FCRA*

74.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

75.     Defendant Castlerock knowingly and willfully discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the FCRA.

76.     Defendant Castlerock has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated male and non-pregnant employees. Defendant Castlerock also created a hostile work environment which affected the benefits, privileges, terms and conditions of Plaintiff's employment because of her gender and pregnancy, as illustrated by, *inter alia*, Defendant's demotion of Plaintiff upon knowledge of her pregnancy, Defendant's deceit in regard to Plaintiff's leave entitlement, Defendant's suspension of Plaintiff's PTO after she gave birth, Defendant's instruction that forced Plaintiff to begin her leave early, Defendant's furlough of Plaintiff, and ultimately Defendant's termination of her employment.

77.     Similarly situated male and non-pregnant individuals did not suffer the above alleged discriminatory treatment.

78.     Defendant Castlerock's violation of the FCRA was the natural and proximate cause of damages to Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendant Castlerock, for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other relief to which the Plaintiff is entitled. It is specifically requested that this Court grant judgment in favor of Plaintiff as follows:

a) Declaring that by the acts and practices complained of herein, Defendant Castlerock has violated FCRA;

b) Directing Defendant Castlerock to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

c) Back pay;

d) Front pay;

e) Directing Defendant Castlerock to pay Plaintiff compensatory damages for her mental anguish, emotional distress, and humiliation;

f) Awarding Plaintiff punitive damages as relates to the malicious and willful conduct of Defendant Castlerock;

g) Awarding Plaintiff costs and reasonable attorneys' fees; and

h) Other such relief as may be appropriate to effectuate the purposes of the FCRA.

### <u>AS AND FOR A FOURTH CAUSE OF ACTION</u>
*Retaliation in violation of FCRA*

79.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

80.     Plaintiff was demoted, furloughed, and ultimately terminated from employment and otherwise retaliated against by Defendant Castlerock because of permutations of discrimination based on gender and/or pregnancy.

81.     Plaintiff complained of the discrimination she suffered by Defendant Castlerock and otherwise engaged in protected activity.

82.    In retaliation, Defendant Castlerock subjected Plaintiff to a series of adverse employment actions including, but not limited to, demoting Plaintiff, furloughing Plaintiff and terminating Plaintiff's employment in violation of the FCRA.

83.    Plaintiff has been damaged by the conduct of Defendant Castlerock.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendant, for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other relief to which the Plaintiff is entitled. It is specifically requested that this Court grant judgment in favor of Plaintiff as follows:

a) Declaring that by the acts and practices complained of herein, Defendant Castlerock has violated FCRA;

b) Directing Defendant Castlerock to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

c) Back pay;

d) Front pay;

e) Directing Defendant Castlerock to pay Plaintiff compensatory damages for her mental anguish, emotional distress, and humiliation;

f) Awarding Plaintiff punitive damages as relates to the malicious and willful conduct of Defendant Castlerock;

g) Awarding Plaintiff costs and reasonable attorneys' fees; and

h) Other such relief as may be appropriate to effectuate the purposes of the FCRA.

## AS AND FOR A FIFTH CAUSE OF ACTION
*Interference and Retaliation under FMLA*

84.    Plaintiff re-alleges and incorporates by reference each and every allegation

in each and every aforementioned paragraph as if fully set forth herein.

85.    Section 2614(a) of the FMLA, states in pertinent part:

(1) In general. Except as provided in subsection (b), any eligible employee
who takes leave under section 102 for the intended purpose of the leave shall
be entitled, on return from such leave: (A) to be restored by the employer to
the position of employment held by the employee when the leave
commenced; or (B) to be restored to an equivalent position with equivalent
employment benefits, pay, and other terms and conditions of employment.

86.    Section 2615(a) of the Family Medical Leave Act, states in pertinent part:

Interference with rights. (1) Exercise of rights. It shall be
unlawful for any employer to interfere with, restrain, or deny
the exercise of or the attempt to exercise, any right provided
under this subchapter…

87.    Despite Defendant Castlerock's knowledge of Plaintiff's need for FMLA

leave, Defendant Castlerock interfered with Plaintiff's rights by failing to notify of her

leave entitlement, lying to her about her leave entitlement, failing to provide Plaintiff with

leave, and failing to return her to her position upon her return from giving birth.

88.    Defendant Castlerock retaliated against Plaintiff for attempting to exercise

her rights under the FMLA by demoting her upon learning she would need FMLA

protected leave, creating a hostile work environment, taking away her employer provided

health insurance, and ultimately terminating her employment.

89.    Defendant Castlerock had no good faith business justification for any of the

actions taken against Plaintiff as alleged herein.

90.     As a result of Defendant Castlerock's actions, Plaintiff was extremely humiliated, degraded, embarrassed, and emotionally distressed.

91.     As a result of the acts and conduct complained of herein, Plaintiff suffered a loss of income, loss of employment, loss of retirement benefits, the loss of a salary/pay, special damages, loss of benefits, other compensation which Plaintiff's employment included, and Plaintiff has also suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

92.     Defendant Castlerock's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendant Castlerock, for all compensatory, liquidated, emotional and physical damages, lost pay, front pay, injunctive relief, and any other relief to which the Plaintiff is entitled. It is specifically requested that this Court grant judgment in favor of Plaintiff as follows:

(a)     Declaring that by the acts and practices complained of herein, Defendant Castlerock has violated FMLA;

(b)     Directing Defendant Castlerock to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

(c)     Directing Defendant Castlerock to make Plaintiff whole for all earnings she would have received but for Defendant Castlerocks's discriminatory and

retaliatory treatment, including but not limited to, lost wages, pension, and other

benefits;

(d)   An injunction issued by this Court prohibiting Defendant Castlerock from

further violation of the FMLA;

(e)   Directing Defendant Castlerock to pay Plaintiff liquidated damages for

interfering with her rights under the FMLA;

(f)   Awarding Plaintiff costs and reasonable attorneys' fees;

(g)   Awarding Plaintiff pre- and post-judgment interest; and

(h)   Other such relief as may be appropriate to effectuate the purposes of the FMLA.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff herein demands a jury trial on and for all issues so triable.

Dated:  New York, New York
          November 10, 2021

                                        Respectfully submitted,

                                        EISNER DICTOR &
                                        LAMADRID, P.C.
                                        Attorneys for Plaintiff

                                        By: _____
                                              Thomas Lamadrid, Esq.
                                        39 Broadway, Suite 1540
                                        New York, NY 10006
                                        Ofc: 212-473-8700
                                        Fax: 212-473-8705
                                        Thomas@EisnerDictor.com

GODDARD LAW PLLC
Attorneys for Plaintiff
*Pending Admission Pro Hac Vice*[2]

By: _____/s/_____
　　　　Megan S. Goddard, Esq.
　　　　Siobhan Klassen, Esq.
39 Broadway, Suite 1540
New York, New York 10006
Office: (646) 504-8363
Fax: (212) 473-8705
megan@goddardlawnyc.com
siobahn@goddardlawnyc.com

---

[2] Megan S. Goddard, Esq. and Siobhan Klassen, Esq. are moving for special admission (*i.e.*, *pro hac vice*) pursuant to Local Rule 2.01(c) immediately following the filing of this Complaint.